FILED
JUL 18 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORRIS AND DONTIEIA GREEN,<br>1925 Gallaudet Street, N.E., #101<br>Washington D.C. 20002<br><br>on their own behalf and as next<br>friends to minor children C.G., J.G., and A.G.<br><br>Plaintiff,<br><br>v.<br><br>THE COMMUNITY PARTNERSHIP FOR THE<br>PREVENTION OF HOMELESSNESS<br>801 Pennsylvania Ave., S.E., Suite 360<br>Washington, D.C. 20003,<br><br>Serve: Marlene L. Johnson, Esq.<br>1617 Tuckerman Street, N.W.<br>Washington, D.C. 20011<br><br>Defendant. | Case: 1:08-cv-01243<br>Assigned To : Leon, Richard J.<br>Assign. Date : 7/18/2008<br>Description: Civil Rights-Non. Employ.<br><br>JURY ACTION |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiffs Norris and Dontieia Green, residents of the District of Columbia, bring this action on their own behalf and on behalf of their minor children, C.G., J.G., and A.G., seeking declaratory relief, compensatory damages, and punitive damages for Defendant's violation of Titles II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794(a); the Fair Housing Act ("FHA"), 42 U.S.C. §3601 et seq.; and the District of Columbia Human Rights Act ("DC HRA"), D.C. Code § 2-1401.01 et seq.

RECEIVED
JUL 10 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

2. This civil rights action is brought to vindicate the rights of Norris and Dontieia Green and their children under federal and local civil rights law. The Community Partnership for the Prevention of Homelessness ("Defendant") discriminated against Norris and Dontieia Green and their children by refusing to accommodate the disability-related needs of Dontieia Green while the Greens resided in a publicly-funded shelter operated by, and under the authority of, Defendant.

3. This case raises important issues concerning the administration of public agency shelter programs, including the extent to which an organization, such as Defendant, can design programs that have the purpose or effect of diminishing the extent to which people with disabilities can enjoy necessary accommodations to rules that may limit their participation in such programs.

## II.   JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within this district.

6. The Court has jurisdiction over Plaintiffs' action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

### III.  PARTIES

7. Dontieia and Norris Green are residents of the District of Columbia who, with their two minor daughters, C.G. and J.G., became homeless in late 2001 or early 2002. Another minor son, A.G., joined them in fall of 2004. Mr. and Mrs. Green and their three minor children left the District of Columbia shelter system in December of 2005 and now live at 1925 Gallaudet Street, N.E., #101, Washington, D.C. 20002.

8. Mrs. Green has a "handicap" within the meaning of the FHA and a disability within the meaning of the ADA, Rehabilitation Act and DC HRA.[1] Mrs. Green has been diagnosed with a psychiatric disability.

9. On information and belief, the District of Columbia, through its Department of Human Services ("DHS") signed a contract with Defendant on October 1, 2004 to direct, superintend, and manage homeless services providers in the District of Columbia.

10. Defendant Partnership is a non-profit corporation established in 1989 and headquartered in Washington, D.C. The Partnership is the sole entity that contracts with DHS to provide emergency shelter services to residents of the District of Columbia. The Partnership in turn subcontracts with other organizations for the provision and management of homeless shelters. In this role, the Partnership provides direct oversight and funding to the Coalition for the Homeless for Spring Road Family Shelter. Pursuant to a contract with the Partnership, the

---

[1] This complaint uses the terms "disability" and "disabled," except when referring to the FHAA's statutory language, which uses "handicap" and "handicapped," legislative history, or in quoting previous court decisions. *See Giebeler v. M & B Assocs., 343 F.3d 1143, 1146 n. 2 (9th Cir.2003)*. These terms are intended to have identical meanings. *See id.*

3

Coalition for the Homeless ("Coalition") operates the Spring Road Family Shelter ("Spring Road") located at 1433-35 Spring Road, N.W. in Washington, D.C.

## IV. STATUTORY BACKGROUND

11. In 1988, Congress amended the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, through the Fair Housing Amendments Act of 1988 ("the Amendments") to afford people with disabilities greater protection from housing discrimination. The law defines "handicap" broadly and prohibits housing discrimination against individuals with physical and/or mental disabilities. In passing the Amendments, Congress specifically prohibited "the use of stereotypes and prejudice to deny critically needed housing to handicapped persons." H.R. Rep. 100-711 at 18, *reprinted at* 1988 U.S. Code Cong. & Admin. News 2173, 2189.

12. The FHA's ban on disability discrimination reflects a "clear pronouncement of a national commitment to end the unnecessary exclusion of people with handicaps from the American mainstream." *Id.* In amending the FHA, Congress acknowledged the devastating impact that housing discrimination has on individuals with disabilities and recognized that prohibition of such discrimination is absolutely essential to their inclusion in American life. *See id.*

13. The FHA makes it illegal to discriminate on the basis of mental or physical disability in the sale or rental of housing or in the provision of services or facilities. It also places certain affirmative obligations on those involved in providing services related to housing, including requiring that reasonable accommodations be made in rules, policies, practices, and services when such accommodations are necessary to afford individuals with disabilities an equal opportunity to use and enjoy their homes.

14. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and the operable regulations adopted thereunder, prohibit discrimination against people with disabilities by public entities and contractors, such as Defendant, and require public entities to make "reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

15. Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the operative regulations adopted thereunder, apply to recipients of federal funds, such as Defendant, and, like the FHA and ADA, prohibit discrimination against people with disabilities, and require a recipient to modify its policies and practices to ensure that they do not discriminate on the basis of disability.

16. The District of Columbia Human Rights Act ("DC HRA"), D.C. Code § 2-1401.01 et seq, prohibits discrimination and harassment on the basis of disability in all aspects of housing. The law requires housing providers such as Defendant to make reasonable accommodations in rules, policies, practices or services at the request of a person with a disability when these accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling.

## V. FACTS

17. The Greens moved into Spring Road around July of 2002.

18. The apartment the Greens formerly occupied at Spring Road, and that is the subject of this litigation, is a "dwelling" within the meaning of the FHA, 42 U.S.C. § 3602(b); constitutes a service, program or activity of a "public entity" within the meaning of the ADA, 42 U.S.C. §12131 *et seq.*; amounts to a program or activity within the meaning of the Rehabilitation

Act, 29 U.S.C. §794; and involves a "transaction in real property" within the meaning of the DCHRA, D.C. Code § 2-1401.02.

19.   Coalition has many rules for residents of Spring Road regarding curfew, submission of housing searches by residents, payment of escrow by residents, required meetings with the staff of the shelter, and appropriate behavior for the shelter.

20.   Mrs. Green has been diagnosed with bipolar disorder, schizophrenia, social phobia, and dependent personality disorder. Because of Mrs. Green's disability, she needed modifications of certain shelter rules and policies in order to achieve equal access to the shelter and its services.

21.   In March of 2003, Mrs. Green, through counsel, submitted a written request for reasonable accommodation to Spring Road in response to an expulsion notice issued by the shelter. The accommodation request explained that Mrs. Green has a serious psychiatric disability and lapses in her medication (caused by inconsistent availability of the medication from her provider) frequently result in memory loss and technical violations of some shelter rules. The request was for Spring Road Family Shelter to allow technical rule violations that did not pose any threat to the Spring Road community and to refrain from expelling the Greens based on such violations until such time as Mrs. Green could be served by a permanent supportive housing program (identified as the Shelter Plus Care permanent housing program).

22.   Mrs. Green did not receive any response from Coalition or Defendant. The expulsion action was later dismissed by an administrative law judge as not in accordance with applicable law.

23. Mrs. Green verbally informed Coalition on numerous occasions that she was unable to comply with some of the shelter rules and regulations without an accommodation for her disability.

24. The Greens were issued a second expulsion notice in July of 2003 for the same technical violations for which Mrs. Green had requested an accommodation. This second expulsion effort was also overturned by an administrative law judge, and it was also found to be legally insufficient.

25. On August 6, 2004, the Greens were issued another expulsion notice on the basis of similar alleged violations, after a year of duplicative and legally insufficient warning letters. All but three of these warning letters were later thrown out by an administrative law judge prior to any evidentiary hearing for lacking legal basis or violating due process.

26. In October of 2004, Coalition expelled the Green family from the shelter without a required final order from the fair hearing judge.

27. The Greens were out of the shelter for four nights before the judge issued an emergency order to let them back in. The family lost all of their belongings, including some items that can never be replaced, such as Mrs. Green's father's ashes, all of their records, and their children's toys. The children missed school, and were distraught at losing everything they owned and having no place to go.

28. Coalition employees stated several times that, because of Mrs. Green's psychiatric disability, they did not believe that she should be receiving shelter services. For instance, a representative of Coalition stated that the Coalition did not believe that they did not have the staffing capacity to deal with her mental illness and that, as a result, they wanted her out of the shelter.

29. On information and belief, Defendant ratified, endorsed or acquiesced in the decision to deny Mrs. Green her requested accommodation.

30. On information and belief, during the time period in question, Defendant did not have a written policy or procedure to govern the assessment of reasonable accommodation requests. On information and belief, during the time period in question, Defendant also failed to appoint and/or publicize the identity of an ADA Compliance Officer or develop a grievance procedure for the resolution of disability rights complaints in the emergency shelter system.

31. In July of 2005, the Greens submitted a complaint to the District of Columbia Office of Human Rights and the U.S. Department of Housing and Urban Development (HUD), alleging Defendant's disability discrimination in violation of federal and local laws.

32. In August of 2005, shortly after the Greens filed their complaint, Coalition filed a motion with a fair hearing judge asking the judge to expel the Greens before their scheduled hearing date. When that motion was denied, Coalition issued four warning letters and an expulsion notice for one alleged rule violation.

33. In December of 2005, the Greens moved out of Spring Road.

34. Defendant operates services, programs or benefits on behalf of a public entity, and therefore has obligations under the ADA.

35. On information and belief, Defendant is a recipient of federal funds, and therefore has obligations under the Rehabilitation Act.

36. Defendant failed to provide adequate monitoring of contractors, and/or employees for violations of the ADA, Rehabilitation Act, the FHA, and the DC HRA.

37. Defendant has failed in its affirmative obligations under the ADA and Rehabilitation Act to ensure that public services are offered in a manner that do not discriminate against people with disabilities.

38. For years, Defendant has been made aware, through legislative testimony, letters, and oral communications, that the shelter system does not comply with federal and local laws which guarantee individuals with disabilities reasonable modifications of policies, practices, and procedures and nondiscriminatory access to shelter.

39. On May 10, 2006, the District of Columbia Office of Human Rights issued its letter of determination with respect to the Greens' complaint against Defendant. The Office of Human Rights determined that:

   a. Mrs. Green had established her mental disability;

   b. Mrs. Green required a reasonable accommodation to afford her equal opportunity to use and enjoy her dwelling; and

   c. Defendant failed to engage in an interactive process and refused to provide the requested accommodation.

40. Based on these findings, the Office of Human Rights found probable cause to believe that the expulsion of the Greens from the Shelter and refusal to respond to the Greens' reasonable accommodation requests constituted discrimination by Defendant on the basis of disability.

41. During the pendency of the complaint at the Office of Human Rights, the statute of limitations under each civil rights law is tolled.

## VI.     INJURIES SUFFERED BY MRS. GREEN AND HER FAMILY

42.     Defendant, directly and/or through its agents, has engaged in a pattern or practice of discrimination against Mrs. Green in the operation of its programs.

43.     In doing the acts or in omitting to act as alleged in this Complaint, each employee or officer of Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by Defendant as principal.

44.     Defendant's conduct was willful, intentional and taken in reckless disregard of Mrs. Green's rights.

45.     Mrs. Green has suffered damage as the result of Defendant's actions as they have intruded into her private affairs, have made discriminatory statements about her, and have wrongfully evicted and put Plaintiffs in fear of being evicted from Spring Road Family Shelter and, perhaps, from other shelters in the District of Columbia shelter program.

46.     As a proximate result of Defendant's conduct, the Greens have suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional and physical distress, and a deprivation of their rights to equal housing opportunity. Therefore, Plaintiffs are entitled to the relief requested herein.

47.     Specifically, as a consequence of Defendant's actions and Plaintiffs' apprehensions about its motives, Mrs. Green lost sleep, was hospitalized several times in the year following the wrongful expulsion for suicidal ideations, experienced sustained anxiety and the attendant physical manifestations thereof, as well as embarrassment and humiliation. In addition, the Green family lost many of their possessions and suffered financial losses when they were unlawfully evicted.

## VII. <u>CLAIMS</u>

### A. FIRST CLAIM
**Violation of the Fair Housing Act (42 U.S.C. § 3604 *et. seq.*)**

48. The Greens re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 47, above.

49. Mrs. Green has a disability within the meaning of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(h) because, as alleged herein, she has mental impairments that substantially limit one or more major life activities.

50. Defendant is subject to the provisions of the FHA.

51. Defendant injured the Greens in violation of FHA by:

   a. Discriminating against them in rental of, or otherwise making unavailable or denying, a dwelling because of a disability in violation of 42 U.S.C. § 3604(f)(1);

   b. Discriminating against them in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2); and

   c. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford disabled persons equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

      d. Engaging in coercion, intimidation, threats or interference against the Greens on account of their having exercised or enjoyed their rights under the Fair Housing Act, in violation of 42 U.S.C. §3617.

52. Specifically, in administration of the District of Columbia shelter program, Defendant has promulgated and rigidly enforced against Plaintiffs regulations and policies which discriminate against people with disabilities.

53. Defendant's conduct proximately caused damages to Plaintiffs, as set forth above.

### B. SECOND CLAIM
### Violation of Section 504 of the Rehabilitation Act (42 U.S.C. § 794)

54. The Greens reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 53, above.

55. Defendant receives federal financial assistance in connection with their operation of the emergency shelter program.

56. Defendant's operations constitute a "program or activity" within the meaning of 29 U.S.C. § 794(b).

57. Section 504 of the Rehabilitation Act prohibits recipients of federal funding from denying to persons with disabilities the benefits provided by the recipient, or from subjecting persons with disabilities to discrimination. 29 U.S.C. § 794.

58. Defendant has violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by:

      a. Denying Mrs. Green the opportunity to benefit from the emergency shelter program or activity because of her disabilities;

    b. Discriminating against Mrs. Green because of her disabilities, including refusing to grant Mrs. Green's requests for reasonable accommodation or modification; and

    c. Using criteria or methods of administration of its programs the effect of which discriminates because of disability and that defeat or substantially impair the objectives of the program for qualified individuals with a particular disability; and

    d. Adopting and enforcing or refusing to adopt and enforce policies and practices designed and intended to ensure that Mrs. Green has access and enjoyment of emergency shelter services in a manner equal to those without disabilities.

59. Specifically, in administration of the District of Columbia shelter program, Defendant has promulgated and rigidly enforced against Plaintiffs regulations and policies which discriminate against people with disabilities.

60. Defendant's conduct proximately caused damages to Plaintiffs, as set forth above.

### C. THIRD CLAIM
**Violation of Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)**

61. The Greens reallege and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 60, above.

62. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132, *et seq.*

63. Mrs. Green is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

64. Defendant is a public entity within the meaning of 42 U.S.C. § 12131(1) because it is an instrumentality of the District of Columbia.

65. Defendant has violated Title II of the ADA by:

   a. Denying Mrs. Green the benefits of its services, programs, and activities;

   b. Refusing to make reasonable modifications in its policies, practices or procedures necessary to afford Mrs. Green and other individuals with disabilities access to the services and privileges offered by Defendants, in violation of 28 C.F.R. § 35.130(b)(7);

   c. Using criteria or methods of administration of its services, programs, or activities, the effect of which discriminates against Mrs. Green because of disability;

   d. Adopting and enforcing or refusing to adopt and enforce policies and practices designed and intended to ensure that Mrs. Green has access and enjoyment of emergency shelter services in a manner equal to those without disabilities;

   e. Engaging in coercion, intimidation, threats or interference against Plaintiffs on account of their having exercised or enjoyed their rights under the Americans with Disabilities Act, in violation of 28 C.F.R. § 35.134; and

   f. Aiding or perpetuating discrimination against persons with disabilities by providing significant assistance to an agency, organization, or person that

discriminates on the basis of disability in providing public entity's services or benefits.

66. Specifically, in administration of the District of Columbia shelter program, Defendant has promulgated and rigidly enforced against Plaintiffs regulations and policies which discriminate against people with disabilities.

67. Defendant's conduct proximately caused damages to Plaintiffs, as set forth above.

### D. FOURTH CLAIM
### Violation of the District of Columbia Human Rights Act
### (D.C. Code § 2-1401.01 *et seq.*)

68. The Greens reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 67, above.

69. Defendant has injured the Greens in violation of the DC HRA by:

   a. Discriminating in the rental of or otherwise making unavailable dwellings because of a disability;

   b. Discriminating in the terms, conditions, or privileges of a rental of a dwelling because of a disability;

   c. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling; and

   d. Engaging in coercion, intimidation, threats or interference against Plaintiffs on account of their having exercised or enjoyed her rights under the DC HRA.

70. Specifically, in administration of the District of Columbia shelter program, Defendant has promulgated and rigidly enforced against Plaintiffs regulations and policies which discriminate against people with disabilities.

71. Defendant's conduct proximately caused damages to Plaintiffs, as set forth above.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court enter an order:

1. Declaring that Defendant has violated:

    a. The Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)

    b. Section 504 of the Rehabilitation Act (42 U.S.C. § 794)

    c. The Fair Housing Act (42 U.S.C. § 3604 *et. seq.*)

    d. The District of Columbia Human Rights Act (D.C. Code § 2-1401.01 et seq.)

2. Awarding monetary damages to Mr. and Mrs. Green and their minor children in an amount to be determined at trial;

3. Awarding punitive damages;

4. Awarding reasonable costs and attorneys fees;

5. Awarding any other relief that the court finds just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: July 10, 2008

                                              Respectfully submitted,

                                              GILBERT RANDOLPH LLP
Chidi J. Ogene, Bar. No. 476097
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
(202) 772-2204
Fax: (202) 772-2273

WASHINGTON LEGAL CLINIC
FOR THE HOMELESS
Amber W. Harding, Bar No. 484130
Patricia Mullahy Fugere, Bar No. 384796
1200 U Street, NW, Third Floor
Washington, DC 20009
(202) 328-5500
Fax: (202) 328-5515

Counsel for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Norris + Dontieia Green

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE  NP

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

The Community Partnership for the Prevention of Homeless

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-01243
Assigned To : Leon, Richard J.
Assign. Date : 7/18/2008
Description: Civil Rights-Non. Employ

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. *Antitrust*
☐ 410 Antitrust

### ☐ B. *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. *Administrative Agency Review*
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

O

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE 7/18/08   SIGNATURE OF ATTORNEY OF RECORD  NCD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

t:\forms\js-44.wpd